'S NAME: Lea Jr., Paul  18637
.ESS:    27 S Azalea  
         Covington   LA 70433-9159

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

009 – 09597      7                                    SECTION:    7 – E

.AL LOUIS    ET AL VERSUS INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP    ET
AL

## CITATION

E FARM FIRE AND CASUALTY COMPANY
UGH: THEIR AGENT FOR SERVICE OF PROCESS: THE LOUISIANA SECRETARY
ATE
ARCHIVES AVE.

N ROUGE                       LA   70809

BEEN SUED:

ther comply with the demand contained in the petition
AGES

opy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of
Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
eof under penalty of default

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                    ADDITIONAL INFORMATION
ssistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans Lawyer
l Service at 561- 8828.  This Referral Service operates in conjunction with the New Orleans Bar Association.
ualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you
l 529 - 1000 for more information.
' PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

SS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
of Orleans, State of LA     September 14, 2009

ce, Room 402, Civil Courts Building,                DALE N. ATKINS,  Clerk of
a Avenue                                            The Civil District Court
ns, LA                                              for the Parish of Orleans
                                                    State of LA

                                                    by _____
                                                              Deputy Clerk

SHERIFF'S RETURN
(for use of process servers only)

PERSONAL SERVICE ·                         DOMICILIARY SERVICE

_____ day of _____                       On this _____ day of _____
      served a copy of the w/i petition          served a copy of the w/i petition
ES                                         FOR DAMAGES
by tendering service on the name
Office of the Secretary of State
SEP 22 2009
ARM FIRE AND CASUALTY COMPANY party through the    On.
copy of this document
JULIE N                                    STATE FARM FIRE AND CASUALTY COMPANY

H: THEIR AGENT FOR SERVICE OF PROCESS: THE    THROUGH: THEIR AGENT FOR SERVICE OF PROCESS:
IA SECRETARY OF STATE                         THE LOUISIANA SECRETARY OF STATE

**EXHIBIT**
**A**
tabbies

Val & Audry Hufft

HO 00058

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 09-9597                                      DIVISION " "    E-7

VAL LOUIS HUFFT AND AUDREY HUTHER HUFFT

VERSUS

INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP,
INTERIOR/EXTERIOR ENTERPRISES, L.L.C.,
MARIGOLD COURT, L.L.C., ANTHONY F. MARINO,
ARCH INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY,
ABC INSURANCE COMPANY,
AND STATE FARM FIRE AND CASUALTY COMPANY

FILED:_____          _____
                                              DEPUTY CLERK

### PETITION FOR DAMAGES

The petition of Val Louis Hufft and Audrey Huther Hufft (collectively "Plaintiffs") are persons of the full age of majority and residents of St. Tammany Parish, State of Louisiana who respectfully represent:

1.

That made Defendants in this cause of action is as follows:

1. Interior/Exterior Building Supply, Limited Partnership ("Interior/Exterior") authorized to do and doing business in the State of Louisiana (hereinafter referred to as Seller and/or Defendant);

2. Interior/Exterior Enterprises, L.L.C. ("Interior/Exterior") is the general partner of Interior/Exterior Building Supply, Limited Partnership authorized to do and doing business in the State of Louisiana (hereinafter referred to as Seller and/or Defendant);

3. Arch Insurance Company, ("Arch") an insurance company authorized to do and doing business in the State of Louisiana;

4. Liberty Mutual Fire Insurance Company ("Liberty") an insurance company authorized to do and doing business in the State of Louisiana;

5. Marigold Court, L.L.C., ("Marigold") authorized to do and doing business in the State of Louisiana (hereinafter referred to as Builder and/or Defendant);

6. Anthony F. Marino, ("Marino") a person of the full age of majority and a resident of St. Tammany Parish, Louisiana (hereinafter referred to as Builder

and/or Defendant);

7. ABC Insurance Company, ("ABC") an insurance company authorized to do and doing busing in the State of Louisiana; and

8. State Farm Fire and Casualty Company ("State Farm") an insurance company, authorized to do and doing business in the State of Louisiana.

**2.**

This action is founded upon Louisiana state law, including, but not limited to, violations of Louisiana Civil Code Articles 2475 and 2520, the warranty against redhibitory defects, the warranty of fitness for a particular purpose and fitness for ordinary use and the warranty of merchantable quality; violations of the Louisiana Products Liability Act, LA. REV. STAT. ANN § 9:2800, *et seq.;* violations of LA. REV. STAT. ANN. § 51:1401, *et. seq.,* or the Louisiana Unfair Trade Practices and Consumer Protection Law; violations of the New Home Warranty Act, LA. REV. STAT. ANN. § 9:3143, *et. seq.;* fraudulent concealment and misrepresentation; negligent misrepresentation; principles of negligence; and claims for medical monitoring pursuant to La. C. C. Art. 2315 which are subject to the jurisdiction of this Court.

**3.**

Venue is proper in this Court pursuant to articles 42 and 73 of the Louisiana Code of Civil Procedure.

## GENERAL ALLEGATIONS

**4.**

Plaintiffs re-allege and reassert all prior paragraphs.

**5.**

Plaintiffs are informed and believe and thereon allege that the drywall system which was used to build Plaintiffs' residence contains harmful components including but not limited to iron disulfide, fly ash and industrial waste products which are harmful to health and property.

**6.**

Plaintiffs are informed and believe and thereon allege that the drywall was manufactured using waste products and consequently emits harmful gases including but not limited to hydrogen sulfide, carbonyl sulfide, sulfur dioxide, cordon disulfide, methane and/or other volatile organic compounds that cause damage to property and physical injury.

compounds that cause damage to property and physical injury.

### 7.

Plaintiffs are informed and believe and thereon allege that the drywall system and the gases that it emits, causes and contributes to contamination of Plaintiffs' residence and to problems including, but not limited to, corrosion of air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, exposed metals, pipes, fixtures, framing and rough carpentry hardware, nails and other household items and building materials, as well as creates noxious, "rotten egg-like" odors.

### 8.

Plaintiffs are informed and believe and thereon allege that the drywall system and the gases that it emits, causes and contributes to physical injuries including but not limited to shortness of breath, dizziness, headaches, fatigue, insomnia, eye irritations and respiratory difficulties, including asthma, as well as many other symptoms for anyone exposed to breathing these gases. These physical calamities may continue, get worse, or have serious future consequences.

### <u>INSURERS</u>

### 9.

Plaintiffs re-allege and reassert all prior paragraphs.

### 10.

Plaintiffs allege that at all times mentioned herein, there was in full force and effect a policy of liability coverage insurance issued by Defendants, Arch and Liberty, under the terms and conditions of which said insurer agreed to provide liability coverage to Interior/Exterior Building Supply, L.P. and/or Interior/Exterior Enterprises, L.L.C. for all damages alleged herein and at all times alleged by Plaintiffs herein and therefore are liable to Plaintiffs and a proper party Defendant.

### 11.

That Arch and Liberty are made Defendants herein directly to the provisions of LSA-R.S. 22:655, <u>et seq.</u>

### 12.

Plaintiffs allege that at all times mentioned herein, there was in full force and effect a policy of liability coverage insurance issued by Defendants, ABC, under the terms and conditions of which said insurer agreed to provide liability coverage to Builder Marigold and/or

are liable to Plaintiffs and a proper party Defendant.

**13.**

That ABC is a made Defendant herein directly to the provisions of LSA-R.S. 22:655, et seq.

**14.**

Plaintiffs allege that at all times mentioned herein, there was in full force and effect a policy of homeowner's coverage insurance issued by Defendants, State Farm, under the terms and conditions of which said insurer agreed to provide coverage to the Plaintiffs for all damages alleged herein and at all relevant times alleged by Plaintiffs and State Farm is therefore, a proper party Defendant.

**15.**

That State Farm is a made Defendant herein directly to the provisions of LSA-R.S. 22:655, et seq.

## BUILDER LIABILITY

**16.**

Plaintiffs re-allege and reassert all prior paragraphs.

**17.**

Defendant Builder installed the Chinese gypsum drywall in connection with the construction of Plaintiffs' new home at 109 Rue Merlot, Abita Springs, Louisiana 70420.

**18.**

Defendant Builder negligently purchased, distributed, delivered, supplied, inspected and/or installed defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to HVAC coils and refrigerator units, certain electrical wiring and plumbing components, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

**19.**

When combined with moisture in the air, the sulfur compounds emitted by the drywall create sulfuric acid. Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing creating leaks, blackening coils and causing HVAC systems and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components and require replacement of all sorts of household items, including

but not limited to microwaves, lighting fixtures, faucets and silverware.  Not only does it blacken and corrode metals including chrome, brass and silver but the defective drywall has a noxious odor, akin to the smell of rotten eggs which harms persons as well.

20.

Defendants Builder's actions will require Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to the home and then repair the damaged property made necessary during the performance of these repairs.

21.

As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property and they will lose the use of the home for months during repair. Plaintiffs have also suffered and continue to suffer personal injuries as a result of Defendants' defective drywall, including, but not limited to, allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

22.

Defendant Builder's actions also resulted in substantial diminution in the value of Plaintiffs' home in addition to substantial non-pecuniary damages to the Plaintiffs as the structure in question is their personal residence.

23.

Defendants warranted that the drywall was free of any redhibitory defects.

24.

Plaintiffs are entitled to enforce the New Home Warranty and/or the Warranty of Redhibition, La. C.C. Art. 2520, because the defects in the drywall existed at the time that Plaintiffs purchased Plaintiffs' home from Builder, and Plaintiffs, as reasonably prudent buyers, had no knowledge of the defects in the drywall when Plaintiffs purchased Plaintiffs' home, and could not have reasonably discovered the hidden defects in the drywall.

25.

Plaintiffs gave Defendants adequate notice and opportunity to repair the redhibitory defects in Plaintiffs' drywall, pursuant to La. C. C. Art. 2522 and asserts that the defect is a major

in Plaintiffs' drywall, pursuant to La. C. C. Art. 2522 and asserts that the defect is a major structural defect causing the home to be unlivable.

26.

The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs, and misrepresenting its product as safe for its intended use, actively concealed from Plaintiffs the true risks associated with its drywall.

27.

As a result of Defendants' actions, Plaintiffs could not reasonable know or have learned through reasonable diligence of the manufacturing defect and that Plaintiffs had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

28.

Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of its drywall. Defendants were under a duty to disclose the true character, quality, and nature of its products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

29.

Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior to filing of this Petition. Further, Plaintiffs allege personal liability based on personal representations that the home was free from defects and/or same would be repaired by Mr. Marino. Further, Plaintiffs are entitled to pierce the corporate veil based on under capitalization of Builder's Corporations use of same as an alter ego and payment of personal expenses by the Builder's Shell Corporation.

**SELLER'S LIABILITY**

30.

31.

Defendant Interior/Exterior had a duty to exercise reasonable care in processing, distributing, delivering, supplying, inspecting marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause damage as described herein.

32.

Defendants impliedly warranted to Plaintiffs that the drywall used in construction of the Property was safe, efficacious, and fit for use for the purposes intended, that the drywall used in the construction of the Property was of merchantable quality, did not produce any dangerous side effects, was adequately tested and was fit for its intended use.

33.

Defendants breached its duty by failing to exercise ordinary care in the processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew or should have know that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

34.

The negligence of the Defendants, their agents, servants, and/or employees included, but was not limited to, the following acts and/or omissions:

    a.  processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

    b.  processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

    c.  selling drywall without performing proper and sufficient tests to determine the dangers to its users;

    d.  negligently failing to adequately and correctly warn the Plaintiffs and the public, of the dangers of Defendants' drywall;

    e.  negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

    f.  negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

    g.  negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

h.  negligently distributing drywall in a manner which was dangerous to its users;

i.  negligently delivering drywall in a manner which was dangerous to its users;

j.  concealing information concerning reports of adverse effects from the Plaintiffs while knowing that Defendants' drywall was unsafe, dangerous and non-conforming with accepted industry standards; and

k.  improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

### 35.

Defendants was negligent in the processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that it:

a.  failed to use due care in purchase and distribution of its drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

b.  failing to conduct adequate testing to determine the safety of its drywall; and

c.  failing to warn Plaintiffs, prior to actively encouraging the sale of its drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

### 36.

Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects, Defendants continued to process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

### 37.

Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent process, as set forth herein.

### 38.

Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

### 39.

Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of Defendants' failure to exercise ordinary care,

as well as Defendants' negligent process, as set forth above.

### 40.

Defendants' negligence was the proximate cause and Plaintiffs' have suffered physical and mental damages, injuries, harm and economic loss which they suffered and will continue to suffer.

## PRODUCTS LIABILITY

### 41.

Plaintiffs re-allege and reassert all prior paragraphs.

### 42.

At all times herein mentioned, Defendants processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' home.

### 43.

Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition which it was processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

### 44.

At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to homes and, in particular, Plaintiffs' home.

### 45.

Defendants' drywall was so defective in design or formulation that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

### 46.

At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

### 47.

Defendants knew, or should have known, that at all times herein mentioned

Defendants' drywall was/is inherently dangerous and unsafe.

**48.**

At the time of use of Defendants' drywall by Plaintiffs, utilized the drywall for the purposes and manner normally intended.

**49.**

Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use or warn of same.

**50.**

Defendants' drywall was processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

**51.**

Defendants processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product which created an unreasonable risk to the Plaintiffs' home as well as to the health of Plaintiffs. Defendants is, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

**52.**

Neither the Plaintiffs, acting as reasonably prudent persons, could discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

**53.**

By reason of the foregoing, the Defendants is strictly liable in tort and by Louisiana Statute to the Plaintiffs for the processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall

**54.**

Defendants' defective design and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

**55.**

Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and/or placing Plaintiffs at increased risk of damage and/or harm.

**56.**

As a direct and proximate result of the defective condition of Defendants' drywall as sold by Defendants, Plaintiffs suffered, and will continue to suffer damages.

**57.**

By reason of the foregoing, Plaintiffs experienced, and/or are at risk of experiencing, serious and dangerous side effects, as well as have incurred financial damage and injury.

**58.**

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs have suffered personal injury and will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## BREACH OF WARRANTY

**59.**

Plaintiffs re-allege and reassert all prior paragraphs.

**60.**

Defendants provided express and implied warrantees that Defendants' drywall was safe and well accepted by homebuilders.

**61.**

Defendants' drywall did not conform to these express and implied representations because Defendants' defective drywall is defective and unsafe, and is associated with numerous side effects. As a direct and proximate result of the breach of said warranties, Plaintiffs suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

**62.**

Plaintiffs did rely on the express and implied warranties of the Defendants herein.

**63.**

The Defendants herein breached the aforesaid warranties, as Defendants' drywall was defective.

64.

Defendants expressly and impliedly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall is of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall was adequately tested and fit for its intended use.

65.

Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall is not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' home because Defendants' drywall was negligently manufactured.

66.

Defendants expressly and impliedly represented to Plaintiffs that Defendants' drywall is safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall is of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall was adequately tested and fit for its intended use.

67.

As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

68.

Defendants falsely and fraudulently represented to Plaintiffs that Defendants' drywall had been tested and was found to be safe and/or effective for use.

69.

That representation made by Defendants was, in fact, false.

70.

When said representations were made by Defendants, upon information and belief, it knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true.

**71.**

These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs.

**72.**

At the time the aforesaid representations, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

**73.**

In reliance upon said representations, the Plaintiffs' home was built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

**74.**

Said Defendants knew, and was aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

**75.**

Defendants knew, or should have known, that Defendants' drywall had a potential to, could, or would cause severe damage and injury to homeowners.

**76.**

Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

**77.**

This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants.

**78.**

Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by Louisiana Law.

**79.**

Defendants' actions and/or omissions as described herein violate Louisiana Law, which was enacted to protect the consuming public from those who engage in unfair methods of

or commerce.

**80.**

Specifically, Defendants misrepresented and omitted material information regarding its drywall by failing to disclose known risks.

**81.**

Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such as concealment, suppression, or omission in connection with the sale and use of Defendants' drywall is in violation of Louisiana Law.

**82.**

Defendants violated Louisiana Law, by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which it was intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

**83.**

Defendants engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs.

**84.**

Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to Louisiana Law.

**85.**

As a direct and proximate result of Defendants' violations of Louisiana Law, Plaintiffs have suffered damages. Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## CIVIL LAW OF LOUISIANA

Plaintiffs re-allege and reassert all prior paragraphs.

**86.**

Plaintiffs who originally filed their claims or were domiciled in Louisiana at the time of the purchase and exposure to the Chinese Drywall have a claim under the Redhibition Laws of Louisiana contained in Civil Code Articles 2520-2548.

87.

Defendants were the distributor, seller and/or installer of the Chinese Drywall.

88.

The Chinese Drywall sold by Defendants was not reasonably fit for its ordinary use.

89.

The defect contained in the Chinese Drywall sold by the Defendants existed at the time the Chinese Drywall was sold to the Plaintiffs.

90.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled, to receive full reimbursement of all moneys paid for the Chinese Drywall plus interest from the time of sale, plus full compensation for all the damages that they have sustained as a foreseeable result thereof, including any physical, mental and emotional damages that were foreseeable and a necessary consequence of the defective Chinese Drywall purchased by them from the Defendants and attorney fees.

91.

As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs are entitled to receive full reimbursement for monies paid for the drywall plus interest from the time of sale, plus full compensation for all monetary damages sustained as a result of Defendants' conduct, including any physical damages suffered by Plaintiffs, damages based on the nature and duration of the inconveniences suffered by Plaintiffs and attorney's fees.

92.

Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by LA. REV. STAT. ANN. § 51:1402.

93.

Defendants' actions and/or omissions as described herein violate LA. REV. STAT. ANN. § 51:1401, *et. seq.,* the Louisiana Unfair Trade Practices and Consumer Law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

94.

Defendants' misrepresentations and concealment of material facts constitutes unconscionable commercial practices, which offend established public policy and are unethical,

oppressive, unscrupulous, and substantially injurious to consumers and other business competitors in violation of LA. REV. STAT. ANN, § 51:1401, *et. seq.* the Louisiana Unfair Trade Practices and Consumer Law.

**95.**

Accordingly, Defendants should be required to establish a medical monitoring program that includes, inter alia:

a.    a trust fund, in an amount to be determined, to pay for the medical monitoring of Plaintiffs' and all members of Plaintiffs' household affected by the drywall, as frequently as determined to be medically necessary, as well as to pay for the development and/or research for other methods by which the health risks of the drywall can be reduced; and

b.    providing information to treating physicians to aid them in detecting the effects of the drywall.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, respectfully pray that Defendants, Interior/Exterior Building Supply, Limited Partnership and Interior/Exterior Enterprises, L.L.C., Marigold Construction, L.L.C., Anthony F. Marino, Arch Insurance Company, Liberty Mutual Fire Insurance Company, ABC Insurance Company and State Farm Fire and Casualty Company be served with a copy of this Petition for Damages and be duly cited to appear and answer same, and that after all due proceedings had, there be Judgment herein in favor of Plaintiffs and against Defendants, Interior/Exterior Building Supply, Limited Partnership and Interior/Exterior Enterprises, L.L.C., Marigold Construction, L.L.C., Anthony F.. Marino, Arch Insurance Company, Liberty Mutual Fire Insurance Company, ABC Insurance Company and State Farm Fire and Casualty Company, jointly, severally and *in solido* as follows:

a.    Damages in an amount to be determined at trial, but in an amount exceeding twenty-five thousand dollars;

b.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

c.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

d.    The costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorney fees;

e.    All statutory damages including medical bills and medical monitoring;

f.    Disgorgement of Defendants' profits from the sale of drywall;

g.    Reimbursement for all costs and expenses incurred in the repair of any

purchase price paid, including, but not limited to, insurance co-payments, interest on these amounts from the date of purchase, attorney fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiffs may be entitled;

h.  Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted:

PAUL A. LEA, JR., #18637
527 East Boston Street – Suite 201
Covington, LA 70433-2948
Telephone:  (985) 292-2300
Telecopy:   (985) 292-3501
**ATTORNEY FOR PLAINTIFFS**

**PLEASE SERVE:**

**INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP**
**Through its Registered Agent**
Clayton C. Geary
727 S. Cortez St.
New Orleans, LA  70119

**INTERIOR/EXTERIOR ENTERPRISES, L.L.C**
**Through its Registered Agent**
Clayton C. Geary
727 S. Cortez St.
New Orleans, LA  70119

**ARCH INSURANCE COMPANY**
**Via Their Agent for Service of Process**
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, Louisiana 70809

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**
**Via Their Agent for Service of Process**
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, Louisiana 70809

**MARIGOLD COURT, L.L.C.**
**Through its Registered Agent**
Anthony F. Marino
4800 Sharp Rd
Mandeville, LA 70471

**ANTHONY F. MARINO**
4800 Sharp Rd
Mandeville, LA 70471

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

and

STATE FARM FIRE AND CASUALTY COMPANY
Via Their Agent for Service of Process
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, Louisiana 70809

PLEASE WITHHOLD SERVICE ON:

ABC INSURANCE COMPANY

# Louisiana Secretary of State
## Service of Process Detailed Data

**Suit Number:** 099597

**Received:** 9/22/09

**Mailed:** 9/23/09

**Certified Mail tracking # :** 70090080000102961991

**Mailed to Insurance Co.:**

LIBERTY MUTUAL FIRE INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
320 SOMERULOS STREET
BATON ROUGE, LA 70802-6129

**Court Name:** CIVIL DISTRICT COURT

**Court Location:** PARISH OF ORLEANS

**Plaintiff:** VAL LOUIS HUFFT, ET AL

**Defendant:** INTERIOR / EXTERIOR BUILDING SUPPLY, ET AL

*********************************************************************************

**Suit Number:** 099597

**Received:** 9/22/09

**Mailed:** 9/23/09

**Certified Mail tracking # :** 70090080000102962059

**Mailed to Insurance Co.:**

STATE FARM FIRE & CASUALTY COMPANY
STATE FARM INSURANCE COMPANIES
KEVIN BARRAS
2370 TOWNE CENTER BLVD.
BATON ROUGE, LA 70806

**Court Name:** CIVIL DISTRICT COURT

**Court Location:** PARISH OF ORLEANS

**Plaintiff:** VAL LOUIS HUFFT, ET AL

**Defendant:** INTERIOR / EXTERIOR BUILDING SUPPLY, ETAL

*********************************************************************************

**Suit Number:** 099597

**Received:** 9/22/09

**Mailed:** 9/23/09

**Certified Mail tracking # :** 70090080000102961892

**Mailed to Insurance Co.:**

ARCH INSURANCE COMPANY
C/O ARCH INSURANCE GROUP, INC.
GENERAL COUNSEL
300 PLAZA THREE
JERSEY CITY, NJ 07311

**Court Name:** CIVIL DISTRICT COURT

**Court Location:** PARISH OF ORLEANS

**Plaintiff:** VAN LOUIS HUFFT, ET AL

**Defendant:** INTERIOR / EXTERIOR BUILDING SUPPLY, ET AL

*********************************************************************************

New Search

**Case Number: 2009 - 09597    E - 07**

**HUFFT, VAL LOUIS ET AL VERSUS INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP ET AL**

**Filed:** 9/10/2009                    **Type:** OTHER                    **Cat:** Paying

PAGE 1 OF 1

| Date Filed | Description | |
|---|---|---|
| 9/14/2009 | **Citation - INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP** | <u>View</u> |

**Pleading Detail...**

**Litigant:**                    **Attorney:** 18637 -- Lea Jr., Paul A

**Filed as Pauper:** No    **Fee Amount Charged:** 0.00    **Amount Paid:** 0.00    **Amount Due:** 0.00

**Date Signed:**                    **Signed By:**                    **Witness Date:** 9/14/2009

**Show Cause Date:**                    **IFP Order Signed Date:**                    **Signed By:**

**Remarks:**

**Service Detail... Document ID 1**

| Party Served: | INTERIOR/EXTERIOR BUILDING SUPPLY, LIMITED PARTNERSHIP | **Through:** | IT'S REGISTERED AGENT: CLAYTON C. GEARY |
|---|---|---|---|
| **Address1:** | 727 S. CORTEZ ST. | **Address2:** | |
| **City / State / Zip:** | NEW ORLEANS, | LA 70119 | |
| **Service Remarks:** | FOR DAMAGES | | |

**Return Detail...**

| Date Returned to Clerk's Office: | 9/18/2009 | **Date of Service:** | 9/16/2009 |
|---|---|---|---|
| **Type of Service:** | Personal | **Sheriff:** | |
| **Return Remarks:** | | | |

**Service Detail... Document ID 2**

| Party Served: | ARCH INSURANCE COMPANY | **Through:** | THEIR AGENT FOR SERVICE OF PROCESS: THE LOUISIANA SECRETARY OF STATE |
|---|---|---|---|
| **Address1:** | 8585 ARCHIVES AVE. | **Address2:** | |
| **City / State / Zip:** | BATON ROUGE, | LA 70809 | |
| **Service Remarks:** | FOR DAMAGES | | |

**Return Detail...**

| Date Returned to Clerk's Office: | 9/30/2009 | **Date of Service:** | 9/22/2009 |
|---|---|---|---|

| Type of Service: | Personal | Sheriff: | |
|---|---|---|---|
| Return Remarks: | | | |

### Service Detail... Document ID 3

| Party Served: | INTERIOR/EXTERIOR ENTERPRISES, L.L.C. | Through: | IT'S REGISTERED AGENT: CLAYTON C. GEARY |
|---|---|---|---|
| Address1: | 727 S. CORTEZ ST. | Address2: | |
| City / State / Zip: | NEW ORLEANS, | LA 70119 | |
| Service Remarks: | FOR DAMAGES | | |

### Return Detail...

| Date Returned to Clerk's Office: | 9/18/2009 | Date of Service: | 9/16/2009 |
|---|---|---|---|
| Type of Service: | Personal | Sheriff: | |
| Return Remarks: | | | |

### Service Detail... Document ID 4

| Party Served: | LIBERTY MUTUAL FIRE INSURANCE COMPANY | Through: | THEIR AGENT FOR SERVICE OF PROCESS: THE LOUISIANA SECRETARY OF STATE |
|---|---|---|---|
| Address1: | 8585 ARCHIVES AVE. | Address2: | |
| City / State / Zip: | BATON ROUGE, | LA 70809 | |
| Service Remarks: | FOR DAMAGES | | |

### Return Detail...

| Date Returned to Clerk's Office: | 9/30/2009 | Date of Service: | 9/22/2009 |
|---|---|---|---|
| Type of Service: | Personal | Sheriff: | |
| Return Remarks: | | | |

### Service Detail... Document ID 5

| Party Served: | MARIGOLD COURT, L.L.C. | Through: | IT'S REGISTERED AGENT: ANTHONY F. MARINO |
|---|---|---|---|
| Address1: | 4800 SHARP RD. | Address2: | |
| City / State / Zip: | MANDEVILLE, | LA 70471 | |
| Service Remarks: | FOR DAMAGES | | |

### Return Detail...

| Date Returned to Clerk's | | Date of Service: | |
|---|---|---|---|

Office:

Type of Service:                              Sheriff:

Return
Remarks:

## Service Detail... Document ID 6

| | | | |
|---|---|---|---|
| **Party Served:** | MARINO, ANTHONY F. | **Through:** | |
| **Address1:** | 4800 SHARP RD. | **Address2:** | |
| **City / State / Zip:** | MANDEVILLE,    LA 70471 | | |
| **Service Remarks:** | FOR DAMAGES | | |

### Return Detail...

**Date Returned to Clerk's Office:**                  **Date of Service:**

**Type of Service:**                                        **Sheriff:**

Return
Remarks:

## Service Detail... Document ID 7

| | | | |
|---|---|---|---|
| **Party Served:** | STATE FARM FIRE AND CASUALTY COMPANY | **Through:** | THEIR AGENT FOR SERVICE OF PROCESS: THE LOUISIANA SECRETARY OF STATE |
| **Address1:** | 8585 ARCHIVES AVE. | **Address2:** | |
| **City / State / Zip:** | BATON ROUGE,    LA 70809 | | |
| **Service Remarks:** | FOR DAMAGES | | |

### Return Detail...

| | | | |
|---|---|---|---|
| **Date Returned to Clerk's Office:** | 9/30/2009 | **Date of Service:** | 9/22/2009 |
| **Type of Service:** | Personal | **Sheriff:** | |
| **Return Remarks:** | | | |